# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS PENA,<br><br>                    Plaintiff,<br><br>           v.<br><br>ROBERT SILLEN, et al.,<br><br>                    Defendants.<br>_____/ | CASE NO. 1:09-cv-00404-LJO-SMS PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING ACTION PROCEED ON EXCESSIVE FORCE CLAIM AGAINST VALENCIA AND DEVER, AND ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED<br><br>(Doc. 12)<br><br>THIRTY-DAY OBJECTION PERIOD |

**Findings and Recommendations Following Screening of Second Amended Complaint**

**I.     Procedural History**

Plaintiff Carlos Pena, a state prisoner proceeding pro se, filed this civil action on September 5, 2008, in Fresno County Superior Court. Plaintiff sought relief pursuant to under 42 U.S.C. § 1983 and California tort law, and Defendants Huckabay, Ericson, Tucker, Valencia, and Dever removed the action to this court on February 27, 2009. Plaintiff filed an amended complaint as a matter of right on July 24, 2009. Fed. R. Civ. P. 15(a). On September 1, 2009, the Court issued an order striking Plaintiff's amended complaint because it lacked Plaintiff's signature, and dismissing Plaintiff's original complaint for failure to state any claims under section 1983. Plaintiff filed a second amended complaint on September 18, 2009.

///

///

1

**II.    Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 129 S.Ct. at 1949.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

**III.   Summary of Facts**[1]

Plaintiff is incarcerated at Pleasant Valley State Prison in Coalinga, California, where the events complained of occurred. Plaintiff alleges that Defendants Huckabay, Ericson, Tucker, Valencia, Dever, Hanner, and Sillen acted with deliberate indifference to his serious medical needs and used excessive force against him, in violation of the Eighth Amendment; retaliated against him,

///

---

[1] With the exception of the addition of the excessive force claim on page 15, the factual allegations are identical to those set forth in the original complaint and summarized in the screening order filed September 1, 2009.

2

in violation of the First Amendment; and committed the torts of assault, battery, and conversion under California law.[2]

Plaintiff had surgery for an abdominal hernia on Friday, April 13, 2007, and had fifteen stitches at the surgery site. Plaintiff was prescribed Vicodin for pain relief, which he received over the weekend.

On Monday, April 16, 2007, at 7:30 a.m., Plaintiff asked Defendant Ericson, a correctional officer, to check on his pain medication because he was in extreme pain.[3] At 8:00 a.m., another inmate told Plaintiff that he would not be receiving breakfast or lunch because he did not have a lay-in.[4] Plaintiff asked for Defendant Ericson and inquired why he could not get breakfast or lunch. Ericson told Plaintiff he would have to go to the kitchen if he wanted to eat because he did not have a lay-in. Plaintiff explained he had surgery and should not be stressing his abdominal muscles, and asked her to consider that issuance of the lay-in may have been overlooked.

At 9:00 a.m., Plaintiff was begging for pain relief, but was told by Ericson that there would be no breakfast, lunch, or pain medication. Plaintiff asked if he could go to the infirmary to see the doctor about pain relief but was told no. At 9:30 a.m., Plaintiff fell to the floor and the alarm was sounded after another inmate yelled "man down." (Doc. 1, Comp., ¶5.) Custodial and medical staff arrived, and Ericson told them Plaintiff had been "giving her a problem all morning" and was "just trying to get pain medication." (Id., ¶6.) Defendant Hanner, a medical technical assistant/registered nurse, without examining Plaintiff or removing him from his cell, said there was nothing wrong with Plaintiff and stated his belief that Plaintiff was being manipulative. Everyone left, joking, "I've fallen and I can't get up."

At 1:15 p.m., Plaintiff was released for yard, went to the infirmary, and presented an emergency grievance stating that he was in pain and thought his staples had "busted loose." (Id., ¶8.)

---

[2] Defendants Hanner and Sillen have not made an appearance in this action.

[3] Although Plaintiff wrote April 14, 2007, in paragraph 3 of his complaint, dates listed elsewhere, Plaintiff's description of April 17, 2007, as "the following day," and Plaintiff's exhibits indicate Plaintiff meant April 16, 2007. (Doc. 1, Comp., ¶11.)

[4] A lay-in authorizes the inmate to be fed in his cell.

3

1 Defendant Hanner told him to go home because there was no such thing as an emergency grievance,
2 but RN Davis asked Plaintiff to the door after he told her that he thought his staples had broken
3 loose. As Plaintiff was going in and Defendant Hanner was leaving for the day, Hanner said, "I've
4 fallen and I can't get up." (Id., ¶9.) RN Davis let Plaintiff into the infirmary, where she cleaned his
5 stomach and gave him his prescription medication.

6 On April 17, 2007, Plaintiff was ordered to report to the infirmary to see the doctor. His
7 blood pressure, temperature, and pulse were taken, and he was told to wait outside for the doctor.
8 Within approximately one minute, Plaintiff's wheelchair was grabbed and forcefully pushed from
9 behind by Defendant Valencia, a correctional officer. Plaintiff yelled at her to stop several times
10 because his feet were dragging, causing extreme pain because of the surgery and staples. Despite
11 being begged to stop, Defendant Valencia continued to push Plaintiff's wheelchair.

12 Plaintiff contacted Defendant Huckabay, a sergeant, and told him what happened. Huckabay
13 told Plaintiff that he would act like he did not hear it if Plaintiff wanted, but if Plaintiff pursued his
14 complaint of abuse, Plaintiff was going to go to the hole.

15 While Plaintiff was waiting to see the doctor, Defendant Valencia came into the infirmary
16 and stared at Plaintiff, asked if Plaintiff was going to pursue it or not, and stated that if so, she was
17 going to pack up his stuff. Plaintiff replied that he did not think he should talk to her right now.
18 Defendants Huckabay and Tucker, a correctional officer, had all the other inmates leave the area, and
19 Tucker had Plaintiff strip down and place his personal items in a plastic bag. Tucker asked Plaintiff
20 what hurt and when he said his staples, Tucker made joke after joke. Huckabay, along with another
21 officer, took Plaintiff to an infirmary room and told Plaintiff it was his last chance to avoid the hole.
22 Huckabay said that he wanted to review the videotape of the incident with Valencia, and then said
23 Plaintiff was going to the hole. Defendants Tucker and Hanner, and others then tried to direct
24 Plaintiff from the infirmary without seeing the doctor, but RN Davis said he should be seen.
25 However, the doctor told Plaintiff to return to building one because they were not getting anywhere
26 with custody staff interrupting.

27 Plaintiff was not able to wheel himself very fast, and in front of the law library, Defendant
28 Dever, a correctional officer, grabbed the wheelchair and told Plaintiff to hold on because they were

4

going to fly. Defendant Tucker yelled to Dever, "Oh, you lowered yourself. I wouldn't touch that chair." (Id., ¶17.) Dever pushed the chair hard after speeding it up and let it go, which caused Plaintiff's bare feet to drag on the ground. As it drifted toward the curb, Plaintiff had to stop it with his bare feet, causing injuries to his abdomen.

Plaintiff was placed in administrative segregation by Defendants Huckabay and Valencia, which he alleges was in retaliation against him for complaining he had been assaulted by staff and was intended to intimidate him from making a complaint.

On April 23, 2007, Plaintiff's pain medication was stopped and he complained to staff until they brought him a wheelchair. Plaintiff saw the unit medical technical assistant (MTA) and was transported to the prison's hospital. A doctor gave Plaintiff two Vicodin upon seeing swelling, cleaned Plaintiff's stomach, and removed the fifteen staples. After Plaintiff returned to his cell, the unit MTA determined that Plaintiff's wound had opened 1.5 centimeters. Plaintiff was taken back to the hospital, where he was told by the doctor that the wound would heal but he would not win any beauty contests. The doctor cleaned the wound and placed steri-strips on it, and Plaintiff was returned to administrative segregation. Plaintiff alleges that his hernia surgery has to be redone, and he is undergoing treatment to repair internal damage done by Defendants.

**IV.     Plaintiff's Claims**

    **A.     Section 1983 Claims**

        **1.     Eighth Amendment Claims**

            **a.     Medical Care**

                **1)     Legal Standard**

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981). A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).

A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

### 2)     Defendants Ericson and Hanner

Plaintiff was prescribed pain medication following his hernia surgery on Friday and he received pain medication over the weekend. On Monday morning, he asked Defendant Ericson to check on the status of his prescribed medication. Approximately ninety minutes later, Plaintiff asked for pain relief, and requested to be allowed to go to the infirmary when his request was denied. Thirty minutes later, Plaintiff went "man down" in his cell and was assessed by staff, including Defendants Ericson and Hanner. Almost four hours after that, Plaintiff went to the infirmary when he was released for yard and a registered nurse gave him his medication.

There is no basis for the imposition of liability under the Eighth Amendment on these facts because they do not support a claim that Defendants Ericson and Hanner knowingly disregarded a substantial risk of harm to Plaintiff's health. Farmer, 511 U.S. at 834; Toguchi, 391 F.3d at 1060. While Plaintiff may have disagreed with the assessment that there was nothing wrong with him and he was being manipulative, he was nonetheless assessed by Defendant Hanner, a medical staff member, approximately thirty minutes after complaining to Defendant Ericson of pain and requesting to go to the infirmary. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Between that assessment and his arrival at the infirmary, four hours elapsed. A delay between a complaint of pain and the receipt of pain medication such as this is minor and in fact routine, whether the patient is inside or outside of prison. Plaintiff may not

6

transform what would be a commonplace delay in the free world into one of constitutional magnitude because of the fact of his incarceration. Estelle v. Gamble, 429 U.S. 97, 106 (1977); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).

### 3) Defendants Valencia and Dever

The incidents in which Defendant Valencia forcefully pushed Plaintiff's wheelchair from behind without warning, and Defendant Dever pushed Plaintiff's wheelchair and let go also do not rise to the level of deliberate indifference to Plaintiff's medical needs. Defendants must have knowingly disregarded an excessive risk to Plaintiff's health, and Plaintiff's allegations do not support a plausible claim that they did so. Iqbal, 129 S.Ct. at 1949.

### 4) Defendants Huckabay and Tucker

Although Plaintiff alleges all of the named defendants violated his rights under the Eighth Amendment, his second amended complaint is devoid of any facts supporting a claim against Defendants Huckabay and Tucker for deliberate indifference to Plaintiff's serious medical needs.

### 5) Defendant Sillen

Finally, Plaintiff alleges a claim against former Receiver Robert Sillen on the basis that Sillen was responsible for the medical care of all inmates in California, which included implementing polices concerning pain medication following surgery and the distribution of pain medication. Plaintiff alleges that Sillen was aware that custody staff frequently interfered with inmates' receipt of their medication and "played doctor," but failed to do anything about it. (Comp., court record 15:10-18.)

A supervisor may be held liable for the constitutional violations of his or her subordinates only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); also Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997). Defendant Sillen may not be held liable for the conduct of prison officials at Pleasant Valley State Prison simply by virtue of his higher position in the prison hierarchy, and there are no allegations supporting a claim that Defendant Sillen was personally deliberately indifferent to Plaintiff's medical

1  needs or that Plaintiff's Eighth Amendment rights were violated by other employees and Sillen
2  turned a blind eye. Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006).
3  The Court recommends dismissal of Plaintiff's medical care claims, with prejudice, for
4  failure to state a claim.

### b.     Excessive Force

6  The Cruel and Unusual Punishments Clause of the Eighth Amendment protects prisoners
7  from the use of excessive physical force. Wilkins v. Gaddy, 130 S.Ct. 1175, 1178 (2010) (per
8  curiam); Hudson v. McMillian, 503 U.S. 1, 8-9, 112 S.Ct. 995 (1992). What is necessary to show
9  sufficient harm under the Eighth Amendment depends upon the claim at issue, with the objective
10 component being contextual and responsive to contemporary standards of decency. Hudson, 503
11 U.S. at 8 (quotation marks and citations omitted). For excessive force claims, the core judicial
12 inquiry is whether the force was applied in a good-faith effort to maintain or restore discipline, or
13 maliciously and sadistically to cause harm. Wilkins, 130 S.Ct. at 1178 (quoting Hudson, 503 U.S.
14 at 7) (quotation marks omitted).
15 Not every malevolent touch by a prison guard gives rise to a federal cause of action. Wilkins,
16 130 S.Ct. at 1178 (quoting Hudson, 503 U.S. at 9) (quotation marks omitted). Necessarily excluded
17 from constitutional recognition is the de minimis use of physical force, provided that the use of force
18 is not of a sort repugnant to the conscience of mankind. Wilkins, 130 S.Ct. at 1178 (quoting
19 Hudson, 503 U.S. at 9-10) (quotations marks omitted). However, the malicious and sadistic use of
20 force to cause harm always violates contemporary standards of decency. Wilkins, 130 S.Ct. at 1178
21 (quoting Hudson, 503 U.S. at 9) (quotation marks omitted).
22 In light of the circumstances under which Plaintiff was injured by Defendants Valencia and
23 Dever's actions, the Court cannot conclude, as a matter of law, they were merely engaging in
24 reckless horseplay rather than attempting to cause Plaintiff harm. Therefore, the Court finds
25 Plaintiff's allegations are sufficient to state a claim against Defendants Valencia and Dever for use
26 of excessive force.
27 However, Plaintiff may not pursue a claim against Defendant Tucker. Defendant Tucker was
28 not involved in touching Plaintiff or his wheelchair, and the nature of his statement to Defendant

Dever does not support Plaintiff's claim that Tucker "incited" the use of force against Plaintiff. Further, the incident at issue does not suggest liability may be imposed on Defendant Tucker for failing to intercede. Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000); Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995). The Court recommends dismissal of the excessive force claim against Defendant Tucker, with prejudice.

### 2. First Amendment Retaliation Claim

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). The Court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 482, 115 S.Ct. 2293 (1995)). The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

While this is only the pleading stage, Plaintiff's allegations are not sufficient to support his conclusory claim that the motive for placing him in administrative segregation was retaliatory. In light of the fact that segregation of an inmate is directed if the inmate's presence in general population presents a threat to himself or others, endangers the institution, or jeopardizes the integrity of an investigation into alleged serious misconduct, Cal. Code Regs., tit. 15 § 3335(a) (West 2010), Plaintiff must allege some facts that would allow a reasonable inference to be drawn that Defendant Huckabay's decision to place Plaintiff in administrative segregation did not reasonably advance a legitimate correctional goal, Iqbal at 1949. Equally plausible here is that Plaintiff was placed in administrative segregation not to retaliate against him for complaining, but because a complaint about staff misconduct requires segregation pending investigation.

The Court recommends Plaintiff's retaliation claim be dismissed from this action, with prejudice, for failure to state a claim.

B.  **State Law Claims**

California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2010). Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 1245, 90 P.3d 116, 124, 13 Cal.Rptr.3d 534, 543 (2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort Claims Act. State v. Superior Court, 32 Cal.4th at 1245, 90 P.3d at 124, 13 Cal.Rptr.3d at 543; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988).

Plaintiff does not allege compliance with the California Tort Claims Act, despite having been notified of the requirement that he do so. Therefore, the Court recommends the dismissal of Plaintiff's state law claims from this action, without prejudice.

C.  **Forms of Relief Sought**

In addition to damages, Plaintiff seeks an injunction prohibiting Defendants from violating his constitutional right to seek redress by retaliating against him or assaulting him, and a declaration that Defendants violated his rights and that Defendants Valencia, Tucker, and Dever's conduct was criminal in nature.

For each form of relief sought in federal court, Plaintiff must establish standing. Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010). This requires Plaintiff to "show that he is under threat of suffering an 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to challenged conduct of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury. Summers v. Earth Island Institute, 129 S.Ct. 1142, 1149 (2009) (citation omitted); Mayfield, 599 F.3d at 969 (citation omitted). In addition, any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part, "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the

Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

This action involves claims arising from events which occurred in 2007. The past actions of Defendants form the case or controversy in this action. The Court has no jurisdiction to issue an order aimed at remedying future, unrelated actions which *might* result from the pursuit of this action by Plaintiff. The Court recommends dismissal of Plaintiff's claim for injunctive relief.

With respect to declaratory relief, "'[a] case or controversy exists justifying declaratory relief only when the challenged government activity is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties.'" Feldman v. Bomar, 518 F.3d 637, 642 (9th Cir. 2008) (quoting Headwaters, Inc. v. Bureau of Land Management, Medford Dist., 893 F.2d 1012, 1015 (9th Cir. 1989) (internal quotations and citation omitted)). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." U.S. v. State of Wash., 759 F.2d 1353, 1357 (9th Cir. 1985) (citations omitted).

The governmental conduct at issue in this action occurred in 2007, and Plaintiff's remedy is damages should he prevail on his claim that his constitutional rights were violated. The Court recommends dismissal of the declaratory relief claim.

## V.     Conclusion and Recommendation

Plaintiff's second amended complaint states a cognizable Eighth Amendment claim against Defendants Valencia and Dever for use of excessive force, but it does not state any other claims. Plaintiff was previously notified of the deficiencies in his claims, but he failed to cure them, instead filing an identical complaint save for the addition of the excessive force claim. Therefore, further leave to amend is not warranted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

///

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's second amended complaint, filed September 18, 2009, against Defendants Valencia and Dever for use of excessive force, in violation of the Eighth Amendment;

2. Plaintiff's Eighth Amendment medical care claims, Eighth Amendment excessive force claim against Defendant Tucker, and First Amendment retaliation claim be dismissed, with prejudice, for failure to state a claim;

3. Plaintiff's state law tort claims be dismissed, without prejudice, for failure to state a claim;

4. Plaintiff's claims for injunctive and declaratory relief be dismissed for failure to state a claim; and

5. Defendants Huckabay, Ericson, Tucker, Hanner, and Sillen be dismissed from the action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   January 26, 2011**              /s/ Sandra M. Snyder
                                    UNITED STATES MAGISTRATE JUDGE